UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

VIRGIL DURHAM,                          )
                                        )
        Plaintiff,                      )        No. 0:22-CV-114-KKC-HAI
                                        )
v.                                      )
                                        )        RECOMMENDED DISPOSITION
WARREN DAVID GREEN, *et al.,*           )
                                        )
        Defendants.                     )

*** *** *** ***

Defendant Jennifer Blanton, through counsel, has filed a motion to dismiss. D.E. 39. On December 28, 2022, *pro se* Plaintiff Virgil Durham filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging Defendant Blanton, and others, violated his Eighth Amendment right against cruel and unusual punishment by injury caused by their deliberate indifference to his serious medical need. D.E. 1. Defendant Blanton's motion seeks dismissal of Plaintiff's remaining deliberate indifference claim against her in her individual capacity based on the bankruptcy of her former employer, Wellpath Holdings, LLC ("Wellpath"). D.E. 39. The Bankruptcy Court for the Southern District of Texas confirmed Wellpath's Chapter 11 bankruptcy plan on May 1, 2025. D.E. 35-1. Defendant Blanton, in support of her motion to dismiss, argues that Plaintiff's deliberate indifference claim is now permanently enjoined.

For the reasons described below, the undersigned recommends that the motion to dismiss (D.E. 39) be **GRANTED**.

## I. Background

District Judge Caldwell previously described the factual allegations in Plaintiff's complaint as follows:

Durham's complaint [R. 1] alleges that he has been treated for seizures and a debilitating anxiety disorder. He further alleges that, although he has been prescribed medications such as Prozac to address these issues, the EKCC Medical Department failed to provide him with his medication from July 5, 2022, through August 9, 2022. He claims that, as a result, he experienced frequent blackouts and seizures, which he states is a known side-effect of being forced to go off of Prozac "cold turkey."

Durham further alleges that, on August 9, 2022, he awoke on his top bunk around 5:30 a.m. and, after speaking to his cellmate, experienced a seizure/blackout and fell over 5 feet onto the concrete floor, landing on his face and breaking his cheekbone in several places. He states that it took 30 minutes to get anyone's attention and to get medical staff to respond. He states that he was taken to the Morgan County ARH, where he was examined by Ronald C. Fleming, DO, and the emergency room staff. Upon his return to EKCC, he states that neither the medical staff nor the institution took any pictures to document the incident. He claims that he tried to take and send pictures via a J-Pay/Securus kiosk machine, but the pictures were deleted and rejected by the staff at the institution before being sent.

Based upon these allegations, he seeks to sue Defendants pursuant to 42 U.S.C. § 1983 for violating his rights under the Eighth Amendment. Specifically, he claims that Blanton failed to reorder his medication, which resulted in the blackout/seizure that caused him to fall from his bed.

D.E. 7 at 2. Upon initial review, Judge Caldwell dismissed Durham's claims against all Defendants in their official capacity, explaining that the "Eleventh Amendment of the United States Constitution specifically prohibits federal courts from exercising subject matter jurisdiction over a suit for money damages brought directly against . . . state officials sued in their official capacities. *Id.* at 3-4. She also dismissed his claims against Defendants Green and Dr. Doe, as the complaint failed to state a claim upon which relief may be granted. *Id.* at 6.

Plaintiff's only remaining claim is against Defendant Blanton in her individual capacity. Under a liberal construction, Judge Caldwell interpreted Durham's complaint to allege that Blanton was personally involved in denying Durham's access to his medication, in violation of the Eighth Amendment. *Id.* at 5.

2

On February 6, 2025, the case was stayed under the automatic stay imposed by Wellpath's bankruptcy case. D.E. 32. The Bankruptcy Court for the Southern District of Texas approved Wellpath, LLC's bankruptcy plan (the "Plan") on May 1. D.E. 35. The plan included a third-party release (the "Release"), which "permanently enjoined [parties] from taking any action, including commencement, further prosecution of, or collection efforts, against the Released Parties, including non-Debtor Defendants." D.E. 39 at 5. To avoid the permanent injunction, parties were required to affirmatively opt out of the release through appropriate filing with the Bankruptcy Court. *Id.*; *see* D.E. 35. For *pro se* creditors who, like Plaintiff,[1] were currently or previously incarcerated, the deadline to file an affirmative notice was July 30, 2025. *Id.* Plaintiff did not file an opt-out notice.

Along with a status report regarding the Plan's Third-Party Release, Defendant Blanton filed a motion to dismiss on September 8, 2025. D.E. 39; D.E. 40. Plaintiff was ordered to respond on or before September 30. D.E. 41. No response has been filed.[2]

## II. Legal Standards

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon with relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court accepts all the Plaintiff's factual allegations as true and construes the complaint in the light most favorable to the Plaintiff. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). Further, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

---

[1] Plaintiff was incarcerated at the Eastern Kentucky Correctional Complex when this complaint was filed. D.E. 1 at 11. He has since been released, as reflected by address changes in the record. *See* D.E. 21; D.E. 42.

[2] On September 29, 2025, the Clerk's Office received a letter from Plaintiff's relative on his behalf updating his address and informing the Court that they did not receive the Court's order to respond until September 25, five days before the response deadline. D.E. 42. Plaintiff did not file any subsequent response and has not attempted to seek any relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In ruling on a motion to dismiss, courts generally cannot consider matters or evidence outside of the pleadings unless it converts the motion to dismiss into one for summary judgment. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citations and internal quotation marks omitted). Courts may, however, consider certain matters outside of the complaint, such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Id.*; *see also Lewis v. Pennsylvania Higher Educ. Assistance Agency*, No. 3:16-CV-0019-GFVT, 2017 WL 814247, at *4 (E.D. Ky. Mar. 1, 2017).

Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, even *pro se* plaintiffs must allege sufficient facts to state a plausible claim to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### A. Legal Standards for Bankruptcy Discharge

Under 11 U.S.C. § 727(b), a bankruptcy reorganization plan discharges the debtor from "all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b). "A claim arises when, 'an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a right to payment under the Bankruptcy Code.'" *Hunter v. Lake Cumberland Regional Hosp., LLC*, No. 11–316–GFVT, 2012 WL 4601717 at *3 (ED Ky. 2012)

4

(quoting *Republic Bank & Trust Co. v. Hutchinson*, 44 B.R. 726, 732 (Bankr.W.D.Ky. 2011). A discharge does not, however, apply to "willful and malicious injury" by the debtor to another. 11 U.S.C. § 523(a)(6).

A discharge under Chapter 11 "operates as an injunction against the commencement or continuation of an action . . ." 11 U.S.C. § 524(a)(2). "Once confirmed, the plan binds the debtor and all creditors, whether or not a creditor has accepted the plan." *George & Co., Inc. Arch Coal, Inc.*, No. 6:19-CV-178-KKC, 2021 WL 832636, at *3 (E.D. Ky. Mar. 4, 2021) (quoting *In re Talon Auto. Grp., Inc.*, 284 B.R. 622, 625 (Bankr. E.D. Mich. 2002)). A confirmed plan constitutes a binding contract between a debtor, its creditors, and other entities. *Id*. (citing *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991); *In re Troutman Enters., Inc.*, 253 B.R. 8, 11 (B.A.P. 6th Cir. 2000)).

### III. Analysis

In her motion to dismiss, Defendant argues that Plaintiff's remaining claim was discharged and permanently enjoined. Plaintiff has not responded or otherwise argued to the contrary. Under the Plan, Releasing Parties are permanently enjoined from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests . . . released or settled pursuant to the Plan . . ." D.E. 39-1 at PAGE ID # 503. According to Defendant, this injunction applies to Plaintiff's deliberate indifference claim, and because he did not affirmatively opt out of the Third-Party Release, he is enjoined from further litigation in this case. D.E. 39 at 5.

As Defendant asserts, Plaintiff did not file an opt-out notice in the bankruptcy case. *See In re Wellpath Holdings, Inc., et al.*, 24-bk-90566 (S.D. Tx. Bankruptcy Court).[3] Plaintiff's

---

[3] Wellpath's bankruptcy case is *In re Wellpath Holdings, Inc.*, *et al.*, 24-bk-90533 (S.D.Tx. Bankruptcy Court). All pro se filings are kept under *In re Wellpath Holdings, Inc.*, *et al.*, 24-bk-90566 (S.D.Tx. Bankruptcy Court).

deliberate indifference claim arose before the Plan for relief was entered in the bankruptcy case. Plaintiff filed his complaint on December 28, 2022, with his alleged injury occurring on August 9, 2022.  D.E. 1 at 3.  The bankruptcy case was initiated on November 11, 2024.  *See* D.E. 29 at 1. Further, as addressed in detail below, the Plaintiff's deliberate indifference claim is not exempt from bankruptcy discharge, the Release applies to Defendant Blanton, and Plaintiff received adequate notice of the bankruptcy proceedings.  Thus, Plaintiff's complaint no longer alleges a claim upon which relief can be granted.

## A.  Dischargeability of Claim

Plaintiff's claim falls within the categories of claims discharged by the Plan.  The Plan discharges claims "to the fullest extent permissible under applicable law," excluding cases of "willful misconduct, gross negligence, or actual fraud . . . ."  D.E. 39-1 at PAGE ID # 499. Statutorily, a bankruptcy discharge cannot eliminate debts for taxes, money obtained by fraud or false pretenses, domestic support obligations, or "willful and malicious injury by the debtor to another entity or to the property of another entity.  11 U.S.C. § 523(a).  Meanwhile, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).  The debtor, therefore, must have acted with intent to cause the injury; "[t]he word "willful" in (a)(6) modifies the word injury, indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  *Id.* at 61 (cleaned up) ("Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead willful acts that cause injury.").  The Sixth Circuit has held that, for an injury to be willful and malicious under § 523(a)(6), it must be one where "the actor desires to cause consequences of his act, or . . . believes

that the consequences are substantially certain to result from it . . ." *In re Markowitz*, 190 F.3d 455, 465 (6th Cir. 1999).

Plaintiff's remaining claim alleges Blanton was deliberately indifferent to a substantial risk of serious harm due to his known medical condition. A deliberate indifference claim contains both an objective and a subjective component. To show that the alleged mistreatment was objectively "sufficiently serious," the plaintiff must show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011).

The subjective component requires a showing that prison officials acted with "deliberate indifference" to inmate health or safety:

> An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." [*Farmer,* 511 U.S. at 837.] The Supreme Court has held that:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

[*Id*. at 842.]

*Bishop*, 636 F.3d at 766-67.

Construing Plaintiff's complaint broadly, the Court has previously described Plaintiff's remaining claim as alleging "Blanton was personally involved in the denial of Durham's medication in violation of his rights under the Eighth Amendment." D.E. 7 at 5. In his complaint, Plaintiff alleges that Blanton was responsible for overseeing the operation of the EKCC Medical Department, and that the medical department failed to have his prescription ordered despite Plaintiff's repeated requests. D.E. 1 at 2. His complaint stated that it was common practice "at EKCC for the medical staff to refuse to reorder the medication until the inmate sees a 'Provider'

7

to re-prescribe the medication," and that it could take weeks to get an appointment with the provider. *Id.* at 8. Because Defendant Blanton oversaw a medical department with this policy, Plaintiff went without his medication, allegedly leading to the seizure that caused the fall and broken bones on August 9, 2022. *Id.*

The aforementioned interpretation of Plaintiff's claim, along with the knowledge requirement of the deliberate indifference legal framework, does suggest that Defendant was at least somewhat willful in denying Plaintiff access to his medication. But, Plaintiff does not allege Defendant intended to cause his *injury*. Nothing establishes that Defendant desired "to cause consequences of [her] act, or . . . believes that the consequences are substantially certain to result from it . . ." *In re Markowitz*, 190 F.3d 455, 465 (6th Cir. 1999). In his complaint, Plaintiff alleges that deprivation of his medication led to "multiple seizure/blackouts which ultimately caused him to fall over 5 feet to a concrete floor, "fracturing" his cheek bone in multiple places and blackening his eye and socket . . ." D.E. 1 at 8. Plaintiff's complaint does not argue, and the record does not suggest, that Defendant intended to injure Plaintiff's face. Even if she had intentionally denied Plaintiff access to his prescribed medication, Plaintiff does not claim that she intended to cause the fall and resulting injuries.

Given Plaintiff does not allege that Defendant intended to cause his fall and subsequent injury, his claim is not exempted from bankruptcy discharge under 11 U.S.C. § 523(a).

### B. Application of the Plan to Non-Debtor Defendant Blanton

Blanton is not a debtor in the bankruptcy case. Nonetheless, the Plan still discharges her from liability because she is considered a "released party." Included in the Plan's definition of "released parties," meaning those who are discharged from external claims arising before the bankruptcy case, are "related parties of the" debtor corporations. D.E. 39-1 at PAGE ID # 450-

8

51. The Plan defines "related parties" to include "employees," both current and former.  *Id.* at PAGE ID # 450.

At the time of the events at issue in Plaintiff's complaint, and at the time that Plaintiff's lawsuit was filed, Blanton was employed by Wellpath, the debtor in the bankruptcy case.  D.E. 39 at 5; *see also* D.E. 25 at 1 ("Wellpath, LLC (the "Debtor") employed Blanton as its Health Services Administrator at Eastern Kentucky Correctional Complex during the alleged relevant timeframe at issue in this case . . ."import).  Plaintiff's remaining claim against Blanton concerns her actions in her individual capacity as the Health Services Administrator for EKCC, a position held through her employment with Wellpath.  D.E. 1 at 8.

Plaintiff, meanwhile, is a "releasing party," defined as "each Holder of a Claim that is or was an incarcerated individual that does not affirmatively elect to opt out of being a Releasing Party by delivering such election . . . to the Debtors, the Claims and Solicitation Agent, or the Bankruptcy Court by" July 30, 2025.  D.E. 39-1 at PAGE ID # 451.  Under the plan,

> each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, damages, remedies, causes of action, demands, rights, debts, actions, suits, . . . of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter existing, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable, direct or derivative, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Releasing Parties or their Estates, that such entity would have been legally entitled to assert  . . . .

*Id.* at PAGE ID #501.  The bankruptcy court's confirmation of the Plan constitutes a finding that the Release is "a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release."  *Id.* at PAGE ID # 502.  Plaintiff, a releasing party, is therefore barred from further assertion of his deliberate indifference claim.

## C. Notice

Finally, Plaintiff received adequate notice of the opt-out requirement and third-party release. A bankruptcy plan, and thus any relevant discharge, will not be binding against a creditor who did not receive adequate notice. *Id.*; *In re HNRC Dissolution Co.*, Case No. 02-14261, 2018 WL 2970722, at *5 (Bankr. E.D. Ky. June 11, 2018) ("A party who fails to receive adequate notice is not bound by the terms of a ... confirmation order [.]"). Nonetheless, a Plaintiff's actual knowledge of the bankruptcy proceedings is irrelevant to whether creditor received adequate notice. *Id.*; *see In re Unioil*, 948 F.2d 678, 684 (10th Cir. 1991). Under Federal Rule of Bankruptcy Procedure 2002(d)(6), in a Chapter 11 bankruptcy, the clerk, or another party designated by the bankruptcy court, must give notice of "the time to file an objection to – and the time of the hearing to consider whether to confirm – a Chapter 11 plan." Similarly, all creditors must be noticed by mail of the entry of an order confirming a plan in a Chapter 11 case. *Id.* at (f)(1)(H).

Plaintiff has not raised the issue of notice, either in a response to the motion to dismiss or otherwise. Even if he had, however, the record demonstrates that Defendant did satisfy the statutory notice requirements.

On May 14, 2025, Wellpath's Claims, Noticing, and Solicitation Agent, Epiq Corporate Restructuring, filed a certification that "Notice of Extended Third-Party Release Opt-Out Period for Incarcerated Individuals" had been served on 6,293 parties via first class mail. *In re Wellpath Holdings, Inc.*, et al., 24-bk-90533 (S.D.Tx. Bankruptcy Court) at Docket Entry 2717. The certificate of service explains that the recipients' "names and addresses are confidential," so the names are not available to confirm Plaintiff's inclusion. *See id.* Nonetheless, Defendant Blanton also filed the bankruptcy court's orders regarding the automatic stay (D.E. 29), confirmation of the

10

Plan (D.E. 33; D.E. 35), and the opt-out notice (D.E. 35) in the record in this case. All were accompanied by a status report explaining the notice and a certificate of service. The notice of the automatic stay (D.E. 29) was discussed during the Court's February 6, 2025, teleconference with Plaintiff participating, and this teleconference was well in advance of the July 30, 2025 opt-out deadline D.E. 32; D.E. 35-1 at PAGE ID # 355. Accordingly, through service of filings in this case, Plaintiff did receive proper notice of the Plan's confirmation and the opt out requirement.

### IV.  Conclusion

For the reasons described above, the undersigned **RECOMMENDS** that Defendant's motion to dismiss (D.E. 39) be **GRANTED**. Due to the discharge by the Wellpath, LLC bankruptcy plan, Plaintiff's sole remaining claim is permanently enjoined.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 25th day of March, 2026.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge

11